IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| v. | § § | EP-11-CR-1297-KC |
| CESAR MANUEL MADERO. | § § | |

**ORDER**

On this day, the Court considered Defendant Cesar Manuel Madero's Motion for Severance of Defendants ("Motion to Sever"), ECF No. 84, and Motion in Limine ("Motion in Limine"), ECF No. 83. For the reasons set forth herein, the Motion to Sever is **GRANTED**. The Motion in Limine is **DENIED** as moot.

**I.   BACKGROUND**

Defendant is charged with one count of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1), and one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846 and 841(a)(1). Superseding Indictment ("Indictment"), ECF No. 70. The Indictment also charges Ricky Barrientos ("Barrientos") in both counts. *Id.* Defendant and Barrientos are scheduled to be tried together on March 2, 2012. Minute Entry, Feb. 15, 2012, ECF No. 88.

The parties are in possession of a taped jailhouse telephone call (the "conversation") made by Barrientos to a person named Rogie. *See* Mot. to Sever 1-2; Mot. in Limine 1-2; Government's Resp. to Def.'s Mot. to Sever ("Response") 2-3, ECF No. 89. The conversation is

as follows:

| | |
|---|---|
| ROGIE: | Hello. |
| BARRIENTOS: | Rogie. |
| ROGIE: | What's up? |
| BARRIENTOS: | Fucking . . . got into some shit. |
| ROGIE: | Ah I know you did. |
| BARRIENTOS: | Who told you? My mom? |
| [VOICES OVERLAP] | |
| ROGIE: | You don't need to tell me I already know. |
| BARRIENTOS: | Who? |
| ROGIE: | I said you don't need to tell me I already know. And what happened? |
| BARRIENTOS: | Um . . . we like almost got . . . well they weren't in our possession. We never touched them or anything, but they were already like on us. Do you know what I mean? |
| ROGIE: | Mmm . . . |
| BARRIENTOS: | But like I didn't have them in my possession or any like that and . . . |

Mot. to Sever 1-2; Mot. in Limine 1-2.[1]

---

[1] The government's Response includes a different version of the conversation. Resp. 2-3. The portion that differs from the conversation presented in the Motion to Sever and Motion in Limine is as follows:
> BARRIENTOS: Um . . . we like almost got . . . well *we weren't in our position*. We never touched them or anything, but they were already like on us. Do you know what I mean?

Resp. 3 (emphasis added).
This inconsistency does not affect the Court's decision. The Court therefore uses the version of the conversation contained in the Motion to Sever and Motion in Limine.

2

Defendant filed a Motion in Limine seeking to exclude the conversation and any other post-arrest statement Barrientos may have made implicating Defendant in the charged crimes. *See* Mot. in Limine.  In addition, Defendant also filed a Motion to Sever requesting the Court to order separate trials for Defendant and Barrientos.  *See* Mot. to Sever.

II.   **DISCUSSION**

   A.   **Standard**

Federal Rule of Civil Procedure 14 allows severance of joined defendants if joinder is prejudicial.  Fed. R. Crim. P. 14.  Specifically, Rule 14 states:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a).

"Prejudice" is defined as "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  *United States v. Rodriguez*, 553 F.3d 380, 394 (5th Cir. 2008) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).  A trial court has discretion in deciding whether or not a joint trial would prejudice a defendant.  *Zafiro*, 506 U.S. at 541 ("Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts.").

The Fifth Circuit counsels that persons indicted together should be tried together, particularly in cases alleging conspiracy.  *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010).  Joint trials are favored, as they "conserve state funds, diminish inconvenience to the witnesses and public authorities, and avoid delays in bringing those accused of crime to trial."

3

*Bruton v. United States*, 391 U.S. 123, 134 (1968). Nevertheless, the achievement of these goals must not substantially prejudice the right of a defendant to a fair trial in which "a jury consider[s] only relevant and competent evidence bearing on the issue of guilt or innocence." *Id.* at 132 n.6 (citing *Blumenthal v. United States*, 332 U.S. 539, 559-60 (1947)).

B.   Analysis

Defendant relies on the *Bruton* doctrine to argue for severance of the trial, or in the alternative, against admission of the conversation. Mot. to Sever 2; Mot. in Limine 2. The *Bruton* doctrine, so named for the case that established it, prevents the admission of a non-testifying defendant's confessions or statements in a joint trial when such confessions or statements inculpate a co-defendant. *See Bruton*, 391 U.S. at 135-37. Under *Bruton*, admission of such confessions or statements violate the non-confessing defendant's rights under the Confrontation Clause. *Id.* Defendant therefore claims that, in light of *Bruton*, admission of the conversation would violate the Confrontation Clause. Mot. to Sever 2; Mot. in Limine 2.

In response, the government argues that the Supreme Court of the United States' decision in *Crawford v. Washington* modified the *Bruton* doctrine, making *Bruton* inapplicable to confessions or statements that are non-testimonial in nature. Resp. 2 (citing *Crawford v. Washington*, 541 U.S. 36 (2004)). The government claims the conversation is non-testimonial, and thus the *Bruton* doctrine does not apply to either prevent the admission of the conversation or compel severance of the trial. *Id.*

In the alternative, the government argues that even if *Bruton* applies, the conversation may be admitted under *Bruton* if the conversation is properly redacted to remove all reference to Defendant. *Id.* at 2-3 (citing *Richardson v. Marsh*, 481 U.S. 200 (1987)). Accordingly, the

4

government offers to redact all mention of Defendant from the conversation in order to render the conversation admissible and prevent severance of the trial. *Id.*

### 1.     The *Bruton* doctrine applies to the conversation

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Bruton*, the Supreme Court held that the Confrontation Clause prohibits admission of a non-testifying defendant's confession at a joint trial when the confession incriminates a co-defendant. *See* 391 U.S. at 135-37. Such confessions are "inevitably suspect" due to the confessor's "recognized motivation to shift blame onto others." *Id.* at 135-36. *Bruton* therefore hinged on the recognition that in such circumstances, merely providing a limiting instruction to the jury is not a constitutionally sound substitute for cross-examination. *Id.* at 137 ("[I]n the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination.").

The Supreme Court again considered the scope of the Confrontation Clause in *Crawford v. Washington*. 541 U.S. at 36. *Crawford* held that the Confrontation Clause only afforded defendants the right to confront those who gave "testimonial" statements. *See* 541 U.S. at 51-52. "Testimonial" statements are statements that have been made or procured primarily for use at a trial. *Michigan v. Bryant*, --- U.S. ----, 131 S. Ct. 1143, 1154-55 (2011) (holding the Confrontation Clause applies to statements whose primary purpose is to substitute for trial testimony); *see also Davis v. Washington*, 547 U.S. 813, 822 (2006) (holding testimonial statements are statements whose "primary purpose" is "to establish or prove past events potentially relevant to later criminal prosecution"). Thus, non-testimonial statements do not

5

implicate the Confrontation Clause.

The government argues that after *Crawford*, the *Bruton* doctrine no longer applies to limit the admission of non-testimonial statements. Resp. 2 (citing *United States v. Castro-Davis*, 612 F.3d 53, 64-66 (1st Cir. 2010)). However, the Fifth Circuit has intimated that it disapproves of the government's theory. In *United States v. Harper*, the Fifth Circuit noted that *Crawford* "did not expressly overrule a line of [Supreme Court] decisions having their genesis in *Bruton v. United States*." 527 F.3d 396, 402-03 (5th Cir. 2008). Similarly, in *United States v. Ramos-Cardenas*, the Fifth Circuit stated that *Crawford* did not signal a departure from the holding in *Bruton*. 524 F.3d 600, 609-610 (5th Cir. 2008) (collecting cases). After the *Harper* and *Ramos-Cardenas* decisions, district courts in the Fifth Circuit have declined to hold that *Crawford* limits *Bruton*. *See United States v. Stevens*, 778 F. Supp. 2d 683, 690-91 (W.D. La. 2011) (separately analyzing admission of an out-of-court statement for *Bruton* error and *Crawford* error); *United States v. Muhmmad*, No. 09-371, 2011 WL 1459704, at *2 (E.D. La. Apr. 14, 2011) ("[T]his Court finds that *Bruton* has not been limited by *Crawford*."). The Court therefore examines admission of the conversation for *Bruton* error.

### 2. Admission of the conversation would violate *Bruton*

As previously stated, the *Bruton* doctrine applies in joint trials to bar admission of statements by a non-testifying co-defendant that incriminate another defendant. *See Bruton*, 391 U.S. at 135-37. The *Bruton* doctrine, however, is not applicable to all incriminating co-defendant statements. Instead, *Bruton* applies only to statements that are incriminating "on [their] face." *Richardson*, 481 U.S. at 208. Thus, "for a Bruton violation to occur, the codefendant's statement must directly implicate the defendant. Where the reference to the

defendant is indirect and the jury can only complete the inference by relying on other evidence in the trial, *Bruton* will not apply." *U.S. v. Walker*, 148 F.3d 518, 522 (5th Cir. 1998), *abrogated on other grounds by Texas v. Cobb*, 532 U.S. 162 (2001).

Here, the conversation does not refer to Defendant by name. Mot. to Sever 2; Mot. in Limine 2. Instead, Barrientos uses the pronoun "we." Mot. to Sever 2; Mot. in Limine 2 ("[W]e like almost got . . . well they weren't in our possession. We never touched them or anything, but they were already like on us."). There is no bright line rule describing whether or when the use of a pronoun is incriminating "on its face." *Richardson*, 481 U.S. at 211 n.5. Instead, the Fifth Circuit examines the use of pronouns to ascertain whether they directly incriminate the objecting defendant without reference to other evidence. *See Ramos-Cardenas*, 524 F.3d at 600; *United States v. Vejar-Urias* 165 F.3d 337, 340 (5th Cir. 1999).

For example, in *Ramos-Cardenas*, fourteen men were charged with possession and conspiracy to possess marijuana with intent to distribute after the men crossed into the United Stated from Mexico. *Ramos-Cardenas*, 524 F.3d at 603-604, 608. At their joint trial, one of the arresting officers testified that a defendant told the officer that "he arrived in Acuna a week before *they* crossed." *Id.* at 604. Multiple co-defendants objected and argued that the use of the pronoun "they" violated the Confrontation Clause. *Id.* at 606-608.

The Fifth Circuit held that the use of the indefinite pronoun "they" did not specifically or obviously refer to the objecting defendants. *Id.* at 608-609. The court noted that because none of the defendants were charged with illegal entry or importation, the statement "they crossed," standing alone, did not implicate any defendant in a charged crime. *Id.* at 608. Thus, even if a jury inferred that "they" referred to the defendants, there was no inculpatory effect. *Id.* Further,

the court admitted that the statement might "incriminate the other defendant by inference"; however, the court stated that the use of such a pronoun does not "obviously refer to specific individuals" or constitute a "vivid accusation." *Id.* at 608-609 (internal quotations omitted). Thus, the court reasoned that "nothing in the statement 'they crossed' [] gives rise to inferences so strong that they would be made immediately if the statement were the first item introduced at trial." *Id.* Because the statement only became incriminating when linked with other evidence, the *Ramos-Cardenas* court found that the statement did not implicate the Confrontation Clause. *Id.*

*Ramos-Cardenas* is distinguishable. Here, the Court is of the opinion that the conversation, standing alone, is incriminating on its face. Indeed, where "it is obvious from consideration of the confession as a whole that the redacted term was a reference to the defendant, then admission of a codefendant's confession that also inculpates the defendant does violate *Bruton,* regardless of whether the redaction was accomplished by use of a neutral pronoun or otherwise." *Vejar-Urias* 165 F.3d at 340. The fact that Barrientos and Defendant are being tried jointly for the same crime and are present together in the courtroom would likely cause a reasonable juror to infer that "we" refers in part to Defendant.

Additionally, the statement "[w]e never touched them or anything, but they were already like on us" apparently relates to the alleged possession of a controlled substance. Mot. to Sever 2; Mot. in Limine 2. Thus, unlike in *Ramos-Cardenas*, the statement may implicate Defendant in charged crimes: possession and conspiracy to possess marijuana. *See generally* Indictment. Because "we" will likely be interpreted to refer to Defendant's participation in charged crimes, it is incriminating "on its face." The Court finds that the *Bruton* doctrine applies to bar admission

of the conversation.[2]

### 3. Redaction

In an effort to circumvent the prejudice that the *Bruton* doctrine seeks to avoid, the government has offered to redact the conversation to remove any reference to Defendant. Specifically, the government offers to change the pronoun "we" to "I," resulting in the following redaction:

> BARRIENTOS: Um… I like almost got …well I wasn't in my position. I never touched them or anything, but they were already like on me. Do you know what I mean?

Resp. 4.

Redacted statement may be admitted with a limiting instruction if all reference to the objecting defendant is eliminated. *Richardson*, 481 U.S. at 209, 211 ("*Bruton* can be complied with by redaction. . . . [when] the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."). It is true that changing "we" to "I" removes all reference to Defendant's existence in the conversation. However, the Court is of the opinion that this is not a true redaction, but instead constitutes a change to the substance of the conversation.

The government's proposed redaction is more appropriately characterized as an alteration than a redaction. Although the Court acknowledges that *Richardson* precludes consideration of the conversation's interpretation in context with other evidence at trial, *Richardson* discusses redactions, not alterations. *See Richardson*, 481 U.S. at 200 (rejecting a contextual analysis in

---

[2] The Court notes that *United States v. Ramos-Cardenas* and *United States v. Vejar-Urias* discuss whether the use of a pronoun in redactions violates the *Bruton* doctrine. *See United States v. Ramos-Cardenas*, 524 F.3d 600 (5th Cir. 2008); *United States v. Vejar-Urias*, 165 F.3d 337 (5th Cir. 2008). Here, the Court decides whether the use of a pronoun in an original, non-redacted conversation implicates the *Bruton* doctrine. This factual distinction does not make these cases any less applicable to the instant issue, as there is no indication that the *Bruton* analysis for redacted and unredacted statements are different.

favor of a textual analysis).  The Court cannot ignore that, depending on the evidence introduced at trial, such an alteration may result in a skewed interpretation of the conversation.  Indeed, the government's proposed alteration would likely affect the way the jury may view subsequently introduced evidence.  Therefore, although the proposed redaction will eliminate any reference to Defendant in the conversation, the proposed redaction may create other issues that could prejudice Defendant.

For the above reasons, the Court therefore severs the trial, as is within its sound discretion under Rule 14.  *Zafiro*, 506 U.S. at 541.

### III.  CONCLUSION

For the foregoing reasons, Defendant Cesar Manuel Madero's Motion to Sever of Defendants ECF No. 84, is **GRANTED**.  Defendant Cesar Manuel Madero's Motion in Limine, ECF No. 83, is **DENIED** as moot.

It is hereby **ORDERED** that Defendant Ricky Barrientos  is scheduled for a status conference on February 29, 2012, at 2:00 P.M.

**IT IS FURTHER ORDERED** Defendant Ricky Barrientos  is scheduled for jury trial on March 2, 2012, at 1:30 p.m..

**IT IS FURTHER ORDERED** that Defendant Cesar Manuel Madero is scheduled for a status conference on February 28, 2012 at 2:00 P.M.

**SO ORDERED**.
.
**SIGNED** on this 22nd  day of February, 2012.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE